PHELPS *against* FOOT :

IN ERROR.

This was an action of *assumpsit* against *Foot* as indorser of a promissory note. The declaration, after alleging the execution and indorsement of the note, proceeded to state, that a suit was immediately commenced against one *Stocking,* the maker, by attachment ; that *Stocking* avoided process so that the officer could not take him, nor could he find property other than a small article of the value of one cent ; that a recovery was had before the court of common pleas in *Hampshire* county in *Massachusetts* for the amount of the note and interest ; and that execution was taken out and put into the hands of a deputy-sheriff, by whom it was regularly returned *non est inventus.*

On the trial before the county court, it was claimed by the defendant's counsel, that the officer who served the writ of attachment acted negligently and unfaithfully, and that the body of *Stocking* might, at any time between the date and return of the writ, have been attached. To disprove this statement, the plaintiff produced the officer as a witness, who testified, that he went to *Stocking's* place of residence in *Southwick,* to serve the writ, called at the shop which he occupied, and there found a man and a boy at work, of whom he enquired after *Stocking ;* that they informed him that *Stocking* was at his house, a few rods distant from the shop ; that he immediately went to the house, and enquired of a woman, who, he learned, was *Stocking's* wife, where *Stocking* was, and at the same time mentioned to her his business ; and that Mrs. *Stocking* informed him that her husband was then at his shop at work, the place where the officer had just before made enquiry. To this evidence, so far as it respects the answers of the man and the boy at the shop, and of Mrs. *Stocking* at the house, the counsel for the defendant objected, and urged that it could not by law be received. The court were of that opinion, and excluded it accordingly.

*In an action by the holder of a promissory note against the indorser, the defendant offered in evidence a writing signed by the plaintiff acknowledging an agreement between them that the plaintiff should sue out a special writ against the maker, and direct the officer to secure the debt, if possible : Held that such evidence was admissible.*

*In such action a deed conveying land to the maker of the note, recorded while the execution obtained against him on the note was in force, is relevant and material evidence for the defendant ; and may be proved by a copy from the register's office, the original not being in the possession or power of the party.*

*Where it became material on the trial of a cause to shew want of due diligence in the service of a former attachment, it was held that evidence of answers given by strangers to enquiries made by the officer respecting the debtor, was admissible, such answers being part of the res gesta.*

The defendant, on his part, offered in evidence the following writing signed by the plaintiff : " *Southwick, August* 14th, 1812. This may certify, that I *Seth Phelps,* to save expense of depositions, do agree, that I was to have the writ against *Amasa Stocking,* on a note indorsed to me by Col. *Enos Foot,* special, and to direct the officer to secure the debt, if he could, or if possible. *Seth Phelps.*" The plaintiff objected to the admission of this evidence ; but the court overruled the objection, and admitted it.

The defendant also offered in evidence a certain paper, purporting to be a copy of a deed of bargain and sale, conveying to *Stocking* in fee thirty acres of land in the town of *Russel* in the county of *Hampshire,* executed in the presence of two subscribing witnesses, and recorded in the register's office while the execution against *Stocking* was in force. On this paper were two certificates in these words : " Received, *August* 3d, 1811, and registered from the original, per *Edward Pyncheon,* Register." " *Hampshire,* viz. *Springfield, August* 19th, 1812. I certify, that the foregoing is a true copy of record, examined by *Edward Pyncheon,* Register." No other evidence was offered to prove that the paper was a copy of an orignal deed. The plaintiff objected to its admission, first, on the ground that it was irrelevant ; and secondly, that if relevant, the original ought to be produced, and its execution proved by the subscribing witnesses. The court decided that the copy offered was legal evidence, and permitted it to be read to the jury.

A verdict being found for the defendant, the plaintiff filed his bill of exceptions, and thereupon brought a writ of error in the superior court. The judgment of the county court was there affirmed. The present writ of error was then brought.

*T. S. Williams* for the plaintiff. 1. The testimony of the officer who had the execution against *Stocking* ought to have been received. The question on the trial was, whether the officer had done his duty. What his duty required in that particular case depended upon the information which he had received. What was said to the officer while he was making search constitutes a part of the transaction to be proved as much as what he said and did. The answers given to the enquiries made at the shop and at the house were offered as facts,

*Hartford,*
November,
1815.

Phelps
*v.*
Foot.

and not as mere evidence of facts. These facts were material as to the question of negligence. If the defendant could shew that the officer had been informed where *Stocking* was, and had neglected to make search in pursuance of such information, it would establish the defence. The plaintiff ought then to be permitted to shew what information the officer did receive, and how he acted in pursuance of it.

2. The writing given in evidence on the trial, was nothing more than an admission on the part of the plaintiff, that the fact therein mentioned could be proved. The question as to the relevancy of that fact is still open, as much as though it had been proved by witnesses before the court. Now, if witnesses were offered to prove a parol agreement between the indorser and indorsee of a note, extending or restraining, or in any way varying the effect of the indorsement, it is clear that such evidence would be inadmissible. If it was in pursuance of the contract implied by law in the indorsement, it was irrelevant, and could only mislead.

3. The copy of a deed to *Stocking*, if it were not otherwise exceptionable, was irrelevant; for the indorsee was not bound to attach *land*. But aside from its irrelevancy, this copy was not properly authenticated. Our courts cannot know, without proof, what the office of a " register" in *Massachusetts* is ; what are his powers and duties ; nor what credit is due to his certificates. Still less can they know, that *Edward Pyncheon* is, or ever was, register. It does not appear that the certificate in question was given under oath. Further, there was no proof of the execution of the original deed ; nor was any reason shewn why the subscribing witnesses might not be had.

*Mitchell* for the defendant. 1. It was not necessary, in order to satisfy either the contract implied by the indorsement, or the express agreement of *Phelps,* that the officer should take the body of *Stocking*. It follows, that all the evidence relative to the officer's search for the body, and the information that he had, was irrelevant. Again, the information received by the officer devolved no new duty upon him. An officer is not bound to go to every place where he is told that a debtor is, unless it be first shewn that the debtor is in fact there. The duty to make search is inde-

pendent of the information received. *Cui bono* then introduce what was said at the shop and at the house?

2. As to the admission of the writing signed by *Phelps*. First, it does not appear that the agreement was by parol; and if it was necessary in order to its validity that it should be in writing, and made at the time of the indorsement, it will be presumed that such was the fact. The acknowledgment of *Phelps* evidently regards a valid agreement. Secondly, it did not vary the contract implied in the blank indorsement. Thirdly, if it did, the parties could legally vary such contract.

3. As to *Stocking's* deed. First, it was relevant to shew that *security* might have been obtained. It shewed that *Stocking* owned land which might have been taken on the execution. Secondly, the copy was admissible, as the original was not in the power or possession of the party. The only objection made on the trial to the copy was, that the original ought to be produced, and proved by the subscribing witnesses. This court will not look at any other points than such as are presented by the bill of exceptions.

SWIFT, Ch. J. In this case sundry questions arise upon the bill of exceptions.

It was contended, that the defendant should not prove a certain agreement at the time of the indorsement of the note, that a writ special should be issued, and the debt secured, if possible. But the plaintiff has acknowledged such agreement; and it does not appear but that it was reduced to writing at the time of the indorsement, and it must now be presumed to be legal and valid. It was therefore admissible evidence.

As to the admission of the copy of the deed; though by law a sworn copy ought to be produced, and a certified copy from a town clerk is not admissible, yet no objection was made on that account; and it does not appear that there was not proper evidence of the copy. The objection apparent on the record is, that the original ought to have been produced, and not a copy; but the original was not in the power of the party; of course, a copy was the best evidence, and was admissible.

The deed was relevant evidence; for by the above agreement the plaintiff was bound to secure the debt, if possible;

he was bound to secure it by taking land, if in his power. It was pertinent, therefore, to prove the maker of the note was the owner of land so that it could be taken ; and as it appears the deed was recorded while the execution was in force, so that the plaintiff might have levied upon it, this evidence was material.

The court refused to admit the officer, who served the writ of attachment issued on the indorsed note, to testify to the answers that were given to his enquiries when he was making search after the maker of the note. It was a material point on the trial whether the officer made due search and enquiry upon the attachment. It was his duty to make enquiry at all proper places, and to make search wherever it was probable he might be found. To shew that he had done this, it was necessary that he should state the enquiries and the answers made, and that he had made search accordingly. Such answers are a part of the transaction ; they are facts, and do not stand on the footing of hearsay evidence. On this ground, I am of opinion that the judgment complained of is erroneous.

In this opinion the other Judges severally concurred.

Judgment reversed.