PATRICK DUNPHY v. GEORGE BARTENBACH.

FILED APRIL 17, 1894.    No. 5517.

1. Admission of Evidence: OBJECTIONS: REVIEW. The sustaining of an objection to an answer which was immaterial to the issues on trial, presents no question for review; and this result is not avoided subsequently by copious offers to prove facts, entirely outside the scope of both the question and answer, to which the objection had already been sustained.

2. Instructions not complained of in the motion for a new trial cannot be reviewed in the supreme court, even though their correctness is challenged by the petition in error and in argument of counsel.

ERROR from the district court of Hall county. Tried below before COFFIN, J.

*Thummel & Platt,* for plaintiff in error, cited: *Buffalo County Nat. Bank v. Hanson,* 34 Neb., 455; *Bedford v. Terhune,* 30 N. Y., 453; *Whitman v. Watry,* 31 Wis., 638; *Schieffelin v. Carpenter,* 15 Wend. [N. Y.], 400.

*Abbott & Caldwell, contra,* cited: *Enyeart v. Davis,* 17
Neb., 236; *Jungerman v. Bovee,* 19 Cal., 355; *Livingston
v. Potts,* 16 Johns. [N. Y.], 28; *Wheeler v. Walden,* 17 Neb.,
125; *Kittle v. St. John,* 7 Neb., 73; *Grimman v. Legge,*
8 Barn. & C. [Eng.], 324; *Lyon v. Reed,* 13 M. & W.
[Eng.], 306; *Thursby v. Plant,* 1 Saunders [Eng.], 236;
*Bailey v. Wells,* 8 Wis., 141*; *Randall v. Rich,* 11 Mass.,
493; *Shepard v. Spaulding,* 4 Met. [Mass.], 416.

RYAN, C.

The defendant in error obtained judgment in the district
court of Hall county against plaintiff in error for the sum
of $405, as the balance due on the lease of a certain store
room in a building in Grand Island, known as the "Barten-
bach Opera House." Originally this room was, by a con-
tract in writing, leased for five years, commencing with July
1, 1883, and thereunder the plaintiff in error paid the rent
until December 1, 1885, when, as defendant in error al-
leged in his petition, the plaintiff quit and abandoned said
premises and refused further to occupy the same or pay
rent thereon, though repeatedly requested to comply with
the terms of the aforesaid lease. In the petition it was
alleged that during the portion of the unexpired term re-
maining after December 1, 1885, the landlord had been
wholly unable to lease the said room, and for such portion
that he was able to lease it the rent was of necessity at a
lower rate than that agreed in the aforesaid written lease.
The prayer of the petition was for judgment for the amount
of the alleged shortage, in the sum of $433.15.

The contention of the plaintiff in error on the trial was,
that on or about May 1 he sold out the business carried on
in said room to one John Kuhlsen, with the knowledge
and consent of Bartenbach, the defendant in error, who at
that time and place released the plaintiff in error from the
aforesaid contract of lease, and then and there defend-

ant in error accepted said Kuhlsen as his lessee of said premises, and then and there leased said premises to Kuhlsen for $65 per month, payable monthly, and that Kuhlsen took possession of said premises from Bartenbach, to whom Kuhlsen paid the rent up to December 1, 1885, at which time Kuhlsen quit possession. Dunphy sought to prove that this abandonment of the premises was because of Kuhlsen having trouble with Bartenbach, who thereupon ordered him to vacate; while the testimony of Bartenbach is that he never ordered Kuhlsen to vacate, but that Kuhlsen's abandonment was purely voluntary. A receipt introduced in evidence showed payment by Dunphy, on January 3, 1885, of the rent up to July 1, 1885. From the date last named until December 1, immediately following, the receipts show that the rent was paid monthly by Kuhlsen. Each receipt was for $65, and, as between Dunphy and Bartenbach, the original lease had fixed the annual rent at $780, so that the amounts paid monthly are of little significance.

The contention of the parties was narrowed down to one proposition, and that is, whether or not there was an agreement on the part of Bartenbach to release Dunphy from his obligation under the written lease to accept Kuhlsen thenceforward as his tenant. On the authority of *Buffalo County Nat. Bank v. Hanson,* 34 Neb., 455, it was insisted by the plaintiff in error that the written lease having been surrendered by an agreement between the parties and the term thereby terminated, and that the agreement having been acted upon by both parties, all liability of Dunphy was terminated. On this point the evidence of Mr. Dunphy was as follows:

Q. What transpired between you and him [Kuhlsen], if anything, along in the spring of 1885?

A. He came to me and asked me if I wouldn't do something for him. He had worked for me a long time; and I asked him what he wanted, and he said he would like to buy the Opera House saloon.

14

Q. Tell what you did,—you and him.

A. I finally sold the place to him and we had everything arranged satisfactory. I says to him, we better go and see Mr. Bartenbach about the lease. So him and me went up to his store and I told him I had sold the place to Hans, and whether he would take him for the rent or not.

Q. You may state whether you and Mr. Kuhlsen, after you made your deal in there, were to see Mr. Bartenbach.

A. Yes, sir.

Q. What was said and done between you parties?

A. I told him I had sold out to him, and whether he would take him for the lease or not; if not, it would stand just as it was and I would be accountable for it.

Objection was made, in the language of the record itself, "to anything that was said between this party and Mr. Bartenbach in regard to taking Mr. Kuhlsen for the rent, as being incompetent and immaterial." The objection was sustained and an exception taken. This was after the answer had been given. Thereupon the record shows as follows: "The defendant desires to prove by this witness, and can prove, that at this time Mr. Dunphy, Mr. Kuhlsen, and Mr. Bartenbach together had a talk with reference to this lease, and that Mr. Bartenbach said to Mr. Dunphy and Mr. Kuhlsen that 'it makes no difference to me to whom the building is rented or leased;' that 'I would just as soon have Mr. Kuhlsen lease the property as you,' and at that time and there Mr. Kuhlsen and Mr. Bartenbach made an agreement in my presence that Mr. Bartenbach was to make a lease out in writing to Mr. Kuhlsen to commence on July 1, 1885, to the expiration of that written lease—along about the 1st of May, 1885; and it was then and there agreed by and between the parties that the original lease should be surrendered, and was then and there surrendered. Objected to, as incompetent, immaterial, and tending to dispute the contents of a written lease. Court: The objection is sustained except as to that portion

offering to prove that the written lease was at the time surrendered, which may be proved, to which defendant excepts." Notwithstanding the permission of the court there was no attempt to prove in any manner that the written lease was surrendered. Upon this same point the evidence of Mr. Kuhlsen was as follows:

Q. What transpired or happened about that time between you and Mr. Dunphy, if anything?

A. Well, I thought I would try——

Q. Just tell what you did.

A. I bought the fixtures of Mr. Dunphy for to run the saloon for myself at that place.

Q. Did you talk with Mr. Bartenbach about this?

A. Yes, sir.

Q. When was it you talked with Mr. Bartenbach about it?

A. It was in the latter part of April, I think; some part of April.

Q. What did you talk to Mr. Bartenbach about it?

A. I was talking about the lease. The time when I bought the stuff from Mr. Dunphy we went to Mr. Bartenbach to see whether he would hold Mr. Dunphy for the lease.

Objected to, as incompetent and immaterial. Sustained and defendant excepts.

The defendant offers to prove by this witness, and can prove, that along about the latter part of April or the first of May, 1885, the witness Kuhlsen purchased the interest of Patrick Dunphy in this saloon that was run and operated in the building of Mr. Bartenbach, and at this time Mr. Bartenbach stated to Mr. Kuhlsen and to Mr. Dunphy "I am willing that Mr. Kuhlsen shall have this property for the balance of this lease for the price of $65 per month and that there shall be a change in it, and that the monthly rent shall be paid by Mr. Kuhlsen each month in advance after the first day of April, 1885, to which time it

is paid," and then and there at that time leased this property to Mr. Kuhlsen for the sum of $65 per month, each month to be paid in advance until the expiration of the Dunphy lease, and that he then and there agreed with Mr. Kuhlsen that he would cause a written lease to be made on this agreement, and the parties should sign it at some day later. He did not at that time—at that present moment.

·Abbott: The plaintiff makes no objection to the proof of the sale by Mr. Dunphy to Mr. Kuhlsen of the fixtures and furniture and other property in the saloon building, but does object to any conversation in regard to the surrender of the lease and the releasing of Mr. Dunphy from the payment of the rent, as incompetent, irrelevant, and immaterial.

The objection as made is sustained, and the defendant excepts.

It will be noted that in the testimony of Mr. Dunphy and in that of Mr. Kuhlsen the exceptions taken are to the sustaining of objections to the offers of proof by each of the witnesses respectively. In neither case was there any question pending, much less was there under consideration an objection thereto. Each witness had answered fully the question which had been last propounded to him. In the evidence of Mr. Kuhlsen the last question was: "What did you talk to Mr. Bartenbach about it?" And the answer: "We were talking about the lease. The time when I bought the stuff from Mr. Dunphy we went to Mr. Bartenbach to see whether he would hold Mr. Dunphy for the lease." In the evidence of Mr. Dunphy, the question was: "What was said and done between the parties?" The answer: "I told him I had sold to him and whether he would take him for the lease or not; if not, it would stand just as it was and I would be accountable for it." Neither this question nor the answer to it tended to show a surrender of the lease by Mr. Bartenbach to Mr. Dunphy and the release of Mr. Dunphy from its obligations. It is

true that in each case the evidence was followed by an offer to prove facts which, if established, would show a surrender of the lease by Bartenbach. While an offer to prove is necessary to illustrate the purpose for which the question has been asked, we do not understand that by a mere offer to prove certain facts the materiality, relevancy, or competency of testimony, which by no possible means could be responsive to the question propounded, is presented for determination. The objection sustained in each instance under consideration was to an offer to prove made by the attorney, not upon objection to a question in response to which no answer had yet been given. After the question had been answered in each case without objection, it was of doubtful propriety to object to the answer; still more was that propriety strained by subsequently offering to prove certain facts entirely foreign to the scope of the question which had last been asked and answered. We are of the opinion that the objections made and sustained cannot now be reviewed on account of the facts to which attention has just been directed.

By his petition in error the plaintiff in error attempts to question the correctness of instructions 1 and 10 given by the court on its own motion. It is insisted that each of these instructions is in conflict with the proposition to which we have adverted as established in the case of *Buffalo County Nat. Bank v. Hanson, supra.* Unfortunately for this contention, neither of these instructions was referred to in the motion for a new trial, and it is an established rule in this court that upon petition in error no question will be reviewed which was not presented in the district court by a motion for a new trial. (*McCormick v. Keith*, 8 Neb., 142; *Manning v. Cunningham*, 21 Neb., 288; *Becker v. Simonds*, 33 Neb., 680.)

The plaintiff insists that there was error in refusing to give instruction No. 2, asked by the defendant. It was in the following language:

"No. 2. If the jury find from the evidence in this case that Bartenbach rented the premises to Kuhlsen commencing on July 1, 1885, for a term from month to month without demanding rent of Dunphy, or without notifying the said Dunphy that he did it on his account, then under the law it was a surrender of the Dunphy lease, and you should find for the defendant."

This instruction required only that the jury should find that Bartenbach rented to Kuhlsen for a term from month to month without demanding rent from Dunphy, or without notifying Dunphy that he did it on his account, to constitute a surrender of Dunphy's lease. Whether or not Dunphy's lease was surrendered was a question of fact to be submitted to the jury upon all the evidence, and an instruction which undertook to limit the inquiry to the considerations above stated was too restrictive in its terms and was properly refused.

Again, it is insisted there was error in refusing instruction No. 3, asked by the defendant, which was in the following language:

"No. 3. You are instructed that if you find from the evidence that on the 1st day of May, 1885, the defendant Patrick Dunphy sold his interest in the fixtures and other property contained in the building in controversy in the case to Honas Kuhlsen, and the said Bartenbach agreed to and did release the defendant Dunphy from the lease in controversy in this case, and rented the said premises to the said Kuhlsen, and the said Kuhlsen immediately took possession thereof, then you will find for the defendant."

This instruction improperly assumed that there was evidence that Bartenbach had agreed to and did release the defendant Dunphy from the lease in controversy and rented the said premises to Kuhlsen. In all cases instructions given should be as to facts in support of which competent evidence had been introduced before the jury. (*Kilpatrick v. Richardson*, 37 Neb., 731.) The instructions

asked by the defendant were therefore properly refused. The question whether or not a lease in writing had been surrendered by an agreement between the parties (by both unequivocally acted upon) that the same should be terminated, was attempted to be presented in no other form or connection than those to which at some length we have already given attention, unless we except the offer to prove by whom the gas bills were paid—a fact of no special significance either way.

The petition in error and the motion for a new trial challenge consideration upon but one other question, and that is whether or not there was error in giving the third instruction of the court, which was in the following language:

"If the plaintiff is entitled to recover at all, he would be entitled to a verdict at your hands for the difference between the amounts called for by the written contract between the plaintiff and the defendant, and the amount which he actually received or could have received from leasing said building by ordinary diligence."

In argument no attempt is made to enlighten us as to any objections to which this instruction is open. It would seem that if there had been no surrender of the lease and no release of Mr. Dunphy from his liability on his obligations therein contained, that this instruction, which gave to him the benefit of whatever rentals the landlord derived, or by the use of reasonable diligence could have derived, from the use of the premises inured to the benefit of Mr. Dunphy, was open to no objection on his part.

There were special interrogatories submitted to the jury, each of which was answered favorably to the contention of the defendant in error. They embraced every fact and proposition necessary to a full determination of all the matters in controversy. In support of each there was competent testimony sufficient to sustain it, and therefore no review will be attempted on that ground. This dis-

poses of all the questions presented, and the judgment of the district court is

AFFIRMED.

HARRISON, J., not sitting.